Brian S. King, #4610
Brent J. Newton, #6950
Samuel M. Hall, #16066
Andrew J. Somers, #19078
**BRIAN S. KING, P.C.**
420 East South Temple, Suite 420
Salt Lake City, UT 84111
Telephone: (801) 532-1739
Facsimile: (801) 532-1936
brian@briansking.com
brent@briansking.com
samuel@briansking.com
andrew@briansking.com

Attorneys for Plaintiffs

THE UNITED STATES DISTRICT COURT
DISTRICT OF UTAH, CENTRAL DIVISION

| | |
|---|---|
| BRADLEY K., and H.K.,<br><br>Plaintiffs,<br><br>vs.<br><br>ANTHEM BLUE CROSS, OPTUM HEALTH SERVICES, HEWLETT PACKARD ENTERPRISE, and the HEWLETT PACKARD ENTERPRISE MEDICAL PLAN,<br><br>Defendants. | COMPLAINT<br><br>Case No. 2:24-cv-00862 |

Plaintiffs Bradley K. ("Brad") and H.K., through their undersigned counsel, complain and

allege against Defendants Anthem Blue Cross ("Anthem"), Optum Health Services ("Optum"),

Hewlett Packard Enterprise ("the Plan Administrator"), and the Hewlett Packard Enterprise

Medical Plan ("the Plan") as follows:

//

//

1

## PARTIES, JURISDICTION AND VENUE

1. Brad and H.K. are natural persons residing in Weld County, Colorado. Brad is H.K.'s father.

2. Anthem is an insurance company responsible for coverage of medical claims that arise under the Plan and acted as a third-party claims administrator, as well as the fiduciary under ERISA, for the Plan during the treatment at issue in this case.

3. Optum, a subsidiary of United Healthcare Insurance Company is responsible for mental health claims arising under the Plan, including the claims at issue in this case.

4. At all relevant times Anthem and Optum acted as agents for the Plan and the Plan Administrator.

5. The Plan Administrator is the designated administrator for the Plan.

6. The Plan is a self-funded employee welfare benefits plan under 29 U.S.C. §1001 *et. seq.*, the Employee Retirement Income Security Act of 1974 ("ERISA"). Brad was a participant in the Plan and H.K. was a beneficiary of the Plan at all relevant times. Brad and H.K. continue to be participants and beneficiaries of the Plan.

7. H.K. received medical care and treatment at Fulshear Treatment to Transition ("Fulshear") from February 13, 2023, to June 16, 2023. Fulshear is a treatment facility located in Fort Bend County Texas, which provides sub-acute inpatient treatment to adolescents with mental health, behavioral, and/or substance abuse problems.

8. Optum denied claims for payment of H.K.'s medical expenses in connection with her treatment at Fulshear.

9. This Court has jurisdiction over this case under 29 U.S.C. §1132(e)(1) and 28 U.S.C. §1331.

10. Venue is appropriate under 29 U.S.C. §1132(e)(2) and 28 U.S.C. §1391(c) based on ERISA's nationwide service of process and venue provisions, and because Anthem, Optum, and the Plan Administrator conduct business in Utah.

11. In addition, the Plaintiffs have been informed and reasonably believe that litigating the case outside of Utah will likely lead to substantially increased litigation costs they will be responsible to pay and that would not be incurred if venue of the case remains in Utah. Finally, given the sensitive nature of the medical treatment at issue, it is the Plaintiffs' desire that the case be resolved in the State of Utah where it is more likely their privacy will be preserved.

12. The remedies the Plaintiffs seek under the terms of ERISA and under the Plan are for the benefits due under the terms of the Plan, and pursuant to 29 U.S.C. §1132(a)(1)(B), for appropriate equitable relief under 29 U.S.C. §1132(a)(3) based on the Defendants' violation of the Mental Health Parity and Addiction Equity Act of 2008 ("MHPAEA"), for an award of statutory damages against the Plan Administrator pursuant to 29 U.S.C. §1132(c) based on the failure of the Plan Administrator and its agents, to produce within 30 days documents under which the Plan was established or operated, an award of prejudgment interest, and an award of attorney fees and costs pursuant to 29 U.S.C. §1132(g).

## **BACKGROUND FACTS**

### **Fulshear**

13. H.K. was admitted to Fulshear on February 13, 2023, due to issues which included bipolar disorder, prolific substance use, self-harming by cutting and burning, theft, disordered eating, depression, and anxiety.

14. In a letter dated February 21, 2023, Optum denied payment for H.K.'s treatment. The

letter gave the following justification for the denial:

> Per Hewlett Packard Enterprise SPD (Summary Plan Document), Mental Health,
> Substance-Related and Addictive Disorder Services include Substance related
> services are for Treatment for alcoholism, substance use and withdrawal are
> excluded.
>
> Benefits include the following levels of care:
> - Inpatient Treatment
> - Residential Treatment
> - Partial Hospitalization/ Day Treatment
> - Intensive Outpatient Treatment
> - Outpatient Treatment

15. On August 14, 2023, Brad submitted a level one appeal of the denial of payment for

H.K.'s treatment at Fulshear. Brad wrote that he was entitled to certain protections under

ERISA during the appeal process, including a full, fair, and thorough review conducted

by appropriately qualified reviewers whose identities were clearly disclosed, which took

into account all of the information he provided, and which gave him the specific reasons

for the adverse determination, referenced the specific plan provisions on which the denial

was based, and which gave him the information necessary to perfect the claim.

16. He asked that the reviewer have experience treating individuals with H.K.'s diagnoses

and that they be knowledgeable about generally accepted standards and clinical best

practices for residential programs in the state of Texas where Fulshear was located. He

also requested that the reviewer be knowledgeable about MHPAEA to respond to his

allegations concerning a violation of the statute.

17. Brad wrote that Optum's denial letter stated that the treatment was denied but gave no

indication as to why this was the case. He wrote that he had reviewed the relevant policy

language and residential treatment was clearly a covered benefit. He also alleged that the

treatment met the definition of medically necessary care in his benefits booklet and was consistent with generally accepted standards of medical practice and the CALOCUS CASII criteria utilized by Optum.

18. He expressed concern that Optum's actions also violated MHPAEA by imposing limitations on facility type and provider specialty and by excluding services that were plainly covered under the terms of the Plan. He asked Optum to perform a MHPAEA compliance analysis to ensure it was acting in accordance with the statute.

19. He wrote that while his claims had been denied due to a supposed lack of coverage, he was willing to provide any other information needed to approve payment upon request. He asked that if the denial was maintained that "Optum explain to me why the terms of my plan and federal law do not apply to my daughter's case."

20. In addition Brad asked to be provided with a copy of all documents under which the Plan was operated, including all governing plan documents, the summary plan description, any insurance policies in place for the benefits he was seeking, any administrative service agreements that existed, any clinical guidelines or medical necessity criteria utilized in the determination (along with their medical or surgical equivalents, whether or not these were used), together with any reports or opinions regarding the claim from any physician or other professional, along with their names, qualifications, and denial rates (collectively the "Plan Documents").

21. In a letter dated August 31, 2023, Optum stated that the denial had been upheld as, "the facility was placed on no authorization status due to licensure issues." The letter falsely claimed that no additional appeals were available.

22. On October 19, 2023, Brad submitted a level two appeal of the denial of payment for H.K.'s treatment. He argued that Optum had not acted in accordance with its responsibilities under ERISA. He wrote that Optum had failed to meaningfully respond to any of the arguments he raised in the appeal process, including his contention that it was in violation of MHPAEA.

23. He expressed concern that Optum had altered its denial rationale and now claimed that Fulshear had been placed on a no authorization status due to supposed licensure issues. He reiterated that Fulshear met all the requirements in his benefits booklet for treatment to be approved. He again asked for a copy of the Plan Documents.

24. In a letter dated November 17, 2023, Optum upheld the denial under the justification that:

> The facility was in an Authorization Unavailable status (beginning 05/2023/18) [sic] during the Residential Treatment Dates of Service that are the focus of this review, 02/13/2023 through 06/16/2023, for one hundred twenty four days.
>
> This was based both on licensure issues and in that the Facility Service Components were not consistent with Guideline expectations.

25. In a letter dated March 22, 2024, Optum partially reversed the denial of payment and approved treatment for dates of service between February 13, 2023, and April 23, 2023.

26. In spite of this reversal, Brad has yet to receive payment for these dates.

27. Optum stated that it maintained the denial from April 24, 2023, through June 17, 2023, as:

> You no longer required the treatment intensity of the residential setting.
>
> In your case:
>
> You had been cooperative, engaged, active in all aspects of therapeutic care, participative and had made needed treatment gains. You were attending to all basic expectations of the program- self-care, caring for your surroundings, taking medication, doing chores, etc.

You assessed that you were making good progress in your identified treatment goals. Overall:

You were actively providing self-care to yourself, were more self-aware, were more self- accepting, felt safer relating to others and were relating well to your peers and staff, were more open and receptive with others, were speaking up more assertively and appropriately, were more able to share your inner world and experiences, were less emotionally dysregulated, had better self-control, were interacting and behaving in more emotionally healthy ways, were getting along better with your family, were sober and were committed to remaining so and continuing in substance recovery.

There was no report of acute behavioral management challenges, suicidal or self-injurious thinking, self-injurious behavior, homicidal thinking or aggression, delusions or hallucinations, continuing major mood symptoms, acute substance related symptoms, lack of cooperation, lack of medication adherence, acute medical issues, or of an inability to care for her [sic] grooming and hygiene.

You continued on in this fashion, all in all, actively working on your issues, concerns, problems, goals through discharge.

Your condition no longer met the guideline for 24 hour, around the clock Residen**tial Care**. [sic]

28. Despite ERISA's express prohibitions concerning reusing reviewers who had previously been involved in a prior claim denial. This letter was again signed by Nelson Gruber, MD, the same individual who signed the November 17, 2023, denial.

29. The Plaintiffs exhausted their pre-litigation appeal obligations under the terms of the Plan and ERISA.

30. The denial of benefits for H.K.'s treatment was a breach of contract and caused Brad to incur medical expenses that should have been paid by the Plan in an amount totaling over $275,000.

31. After Optum repeatedly failed to produce the documentation he requested, Brad made one last attempt to procure it by sending a request directly to the Plan Administrator. In a letter dated February 13, 2024, he asked to be provided with:

- Disclosure of the identities of all individuals with clinical or medical expertise who evaluated the treatment for my daughter, [H.K.], at Fulshear, copies of those individuals' *curriculum vitae*, copies of any memoranda, emails, reports, or other documents reflecting the rationale of the reviewers in denying coverage for [H.K.]'s claim;
- A complete copy of both the medical necessity criteria utilized by Optum in determining that [H.K.]'s treatment was not medically necessary and that treatment for her at a lower level of care was appropriate;
- A complete copy of the medical necessity criteria utilized by the Plan for skilled nursing facilities, sub-acute inpatient rehabilitation treatment, and inpatient hospice treatment. This is necessary to allow me to carry out an evaluation of whether the Plan has complied with the requirements of the federal Mental Health Parity and Addiction Equity Act;
- Copies of documents identifying the self-compliance analysis the Plan and Optum have carried out to determine the extent to which they are complying with the federal Mental Health Parity and Addiction Equity Act.
- Complete copies of any and all internal records compiled by Optum and Hewlett Packard Enterprise in connection with [H.K.]'s claim including, but not limited to, telephone logs, memoranda, notes, emails, correspondence, or any other communications;
- A copy of the summary plan description, master plan document, certificate of insurance, insurance policy, and any other document under which [H.K.]'s insurance plan is operated;
- Copies of any and all administrative service agreements, contracts or other documents which described and defined the relationship, rights and obligations of and between you, the plan administrator, Optum; and
- Copies of any and all documents outlining the level of accreditation required for residential treatment programs;
- Copies of any and all documents showing whether analogous levels of care to residential treatment programs also require these levels of accreditation; and
- Copies of documents identifying the process, strategies, evidentiary standards, or other factors the Plan used to determine that the treatment at Fulshear was experimental and investigational.
- Copies of documents identifying the processes, strategies, evidentiary standards, and other factors used to determine whether treatment at sub-acute inpatient programs for medical or surgical treatment is experimental and investigational.
- Copies of documents identifying the processes, strategies, evidentiary standards, and other factors used to apply a nonquantitative treatment limitation with respect to medical/surgical benefits and mental health or substance use disorder benefits under the plan.

32. Brad did not receive the materials he requested.

//

//

## FIRST CAUSE OF ACTION

### (Claim for Recovery of Benefits Under 29 U.S.C. §1132(a)(1)(B)
### Against Anthem, Optum, and the Plan)

33. ERISA imposes higher-than-marketplace quality standards on insurers and plan administrators. It sets forth a special standard of care upon plan fiduciaries such as Anthem and Optum, acting as agents of the Plan, to discharge their duties in respect to claims processing solely in the interests of the participants and beneficiaries of the Plan. 29 U.S.C. §1104(a)(1).

34. Anthem, Optum, and the Plan failed to provide coverage for H.K.'s treatment in violation of the express terms of the Plan, which promise benefits to employees and their dependents for medically necessary treatment of mental health and substance use disorders.

35. ERISA also underscores the particular importance of accurate claims processing and evaluation by requiring that administrators provide a "full and fair review" of claim denials and to engage in a meaningful dialogue with the Plaintiffs in the pre-litigation appeal process. 29 U.S.C. §1133(2).

36. The denial letters produced by Optum do little to elucidate whether Optum conducted a meaningful analysis of the Plaintiffs' appeals or whether it provided them with the "full and fair review" to which they are entitled.

37. Optum failed to substantively respond to the issues presented in Brad's appeals and did not meaningfully address the arguments or concerns that the Plaintiffs raised during the appeals process.

38. In fact, none of the denials Brad received are consistent with each other. Optum first denied payment on the basis that the service was not covered under the Plan, it then

abandoned this rationale and stated that Fulshear was not covered due to licensure issues, and then also abandoned that rationale to assert that the treatment was partially not medically necessary.

39. This undue delay forced Plaintiffs to slowly exhaust their ability to appeal based on bad faith representations of the terms of the Plan. It also impeded them from making a stronger case for the medical necessity of the claims, due to Optum's failure to use this as a denial basis until its last letter.

40. Optum also appears to have utilized Nelson Gruber to review multiple claim appeals despite ERISA's prohibition of reusing reviewers who have been involved in prior claims evaluations.

41. Optum and the agents of the Plan breached their fiduciary duties to H.K. when they failed to comply with their obligations under 29 U.S.C. §1104 and 29 U.S.C. §1133 to act solely in H.K.'s interest and for the exclusive purpose of providing benefits to ERISA participants and beneficiaries, to produce copies of relevant documents and information to claimants upon request, and to provide a full and fair review of H.K.'s claims.

42. The actions of Optum and the Plan in failing to provide coverage for H.K.'s medically necessary treatment are a violation of the terms of the Plan and its medical necessity and facility eligibility criteria.

43. While the presentation of alternative or potentially inconsistent claims in the manner that Plaintiffs state in their first, second, and third causes of action is specifically anticipated and allowed under F.R.Civ.P. 8, Plaintiffs contend they are entitled to relief and appropriate remedies under each cause of action.

//

**SECOND CAUSE OF ACTION**

**(Claim for Violation of MHPAEA Under 29 U.S.C. §1132(a)(3) Against Anthem, Optum, and the Plan)**

44. MHPAEA is incorporated into ERISA and is enforceable by ERISA participants and beneficiaries as a requirement of both ERISA and MHPAEA. The obligation to comply with both ERISA and MHPAEA is part of Optum's fiduciary duties.

45. MHPAEA requires ERISA plans to provide no less generous coverage for treatment of mental health and substance use disorders than they provide for treatment of medical/surgical disorders.

46. MHPAEA prohibits ERISA plans from imposing treatment limitations on mental health or substance use disorder benefits that are more restrictive than the predominant treatment limitations applied to substantially all medical and surgical benefits and makes illegal separate treatment limitations that are applicable only with respect to mental health or substance use disorder benefits. 29 U.S.C.§1185a(a)(3)(A)(ii).

47. Impermissible nonquantitative treatment limitations under MHPAEA include, but are not limited to, medical management standards limiting or excluding benefits based on medical necessity; refusal to pay for higher-cost treatment until it can be shown that a lower-cost treatment is not effective; and restrictions based on geographic location, facility type, provider specialty, or other criteria that limit the scope or duration of benefits for mental health or substance use disorder treatment. 29 C.F.R. §2590.712(c)(4)(ii)(A), (F), and (H).

48. The medical necessity and facility eligibility criteria used by Anthem and Optum for the intermediate level mental health treatment benefits at issue in this case are more stringent

or restrictive than the criteria the Plan applies to analogous intermediate levels of medical or surgical benefits.

49. Comparable benefits offered by the Plan for medical/surgical treatment analogous to the benefits the Plan excluded for H.K.'s treatment include sub-acute inpatient treatment settings such as skilled nursing facilities, inpatient hospice care, and rehabilitation facilities.

50. When Optum and the Plan receive claims for intermediate level treatment of medical and surgical conditions, they provide benefits and pay the claims as outlined in the terms of the Plan based on generally accepted standards of medical practice.

51. Optum and the Plan evaluated H.K.'s mental health claims using criteria that deviate from generally accepted standards of medical practice. This process resulted in a disparity because the Plan denied coverage for mental health benefits when the analogous levels of medical or surgical benefits would have been paid.

52. Optum initially denied payment on grounds that it later abandoned such as licensure practices that are inconsistent with the plain language of Brad's benefits booklet. While Optum appears to concede that it erred by excluding residential treatment at Fulshear entirely, Plaintiffs contend that Optum's rejection of Fulshear violated MHPAEA and inasmuch as Optum continues to exclude a significant portion of the cost of H.K.'s treatment at Fulshear, Plaintiffs request appropriate equitable relief under MHPAEA.

53. In its final denial letter, Optum's perennial reviewer Nelson Gruber shifted to a new rationale, largely invoking acute level requirements for the non-acute level of care H.K. received. Dr. Gruber wrote in part:

> There was no report of acute behavioral management challenges, suicidal or self-injurious thinking, self-injurious behavior, homicidal thinking or aggression,

delusions or hallucinations, continuing major mood symptoms, acute substance related symptoms, lack of cooperation, lack of medication adherence, acute medical issues, or of an inability to care for her [sic] grooming and hygiene.

54. This improper use of acute inpatient criteria was a nonquantitative treatment limitation that cannot permissibly be applied to evaluate the sub-acute level of care that H.K. received.

55. The Plan does not require individuals receiving treatment at sub-acute inpatient facilities for medical/surgical conditions to satisfy acute medical necessity criteria to receive Plan benefits.

56. The treatment provided in an acute care environment is necessarily distinct from treatment provided in a non-acute environment. Utilizing acute criteria to evaluate a non-acute claim will result in a near universal denial of benefits, regardless of the medical necessity, clinical appropriateness, or nature of the treatment.

57. The Defendants cannot and will not deny that use of acute care criteria, either on its face or in application, to evaluate sub-acute treatment violates generally accepted standards of medical practice. They must and do acknowledge that they adhere to generally accepted standards of medical practice when they evaluate the medical necessity criteria of both mental health/substance use disorders and medical/surgical claims.

58. Furthermore, Defendants failed to identify what circumstances changed in H.K.'s presentation for it to approve a portion of her treatment through April 23, 2023, and then deny any further payment after that date.

59. In this manner, the Defendants violate 29 C.F.R. §2590.712(c)(4)(i) because the terms of the Plan and the medical necessity criteria utilized by the Plan and Optum, as written or

in operation, use processes, strategies, standards, or other factors to limit coverage for mental health or substance use disorder treatment in a way that is inconsistent with, and more stringently applied, than the processes, strategies, standards or other factors used to limit coverage for medical/surgical treatment in the same classification.

60. The Defendants did not produce the documents the Plaintiffs requested to evaluate medical necessity and MHPAEA compliance, nor did they address in any substantive capacity the Plaintiffs' allegations that the Defendants were not in compliance with MHPAEA.

61. In fact, despite Brad's request that Optum and the Plan conduct a parity compliance analysis and despite the direction from the Department of Labor that ERISA plan and claim administrators perform parity compliance analyses, the Defendants have not provided Brad with any information about whether they have carried out any parity compliance analysis and, to the extent that any such analysis was performed, Optum and the Plan have not provided Brad with any information about the results of this analysis.

62. The violations of MHPAEA by the Defendants are breaches of fiduciary duty and also give the Plaintiffs the right to obtain appropriate equitable remedies as provided under 29 U.S.C. §1132(a)(3) including, but not limited to:

(a) A declaration that the actions of the Defendants violate MHPAEA;

(b) An injunction ordering the Defendants to cease violating MHPAEA and requiring compliance with the statute;

(c) An order requiring the reformation of the terms of the Plan and the criteria utilized by the Defendants to interpret and apply the terms of the Plan to ensure compliance with MHPAEA;

(d) An order requiring disgorgement of funds obtained by or retained by the Defendants as a result of their violations of MHPAEA;

(e) An order requiring an accounting by the Defendants of the funds wrongly withheld by each Defendant from participants and beneficiaries of the Plan as a result of the Defendants' violations of MHPAEA;

(f) An order based on the equitable remedy of surcharge requiring the Defendants to provide payment to the Plaintiffs as make-whole relief for their loss;

(g) An order equitably estopping the Defendants from denying the Plaintiffs' claims in violation of MHPAEA; and

(h) An order providing restitution from the Defendants to the Plaintiffs for their loss arising out of the Defendants' violation of MHPAEA.

**THIRD CAUSE OF ACTION**

**(Request for Statutory Penalties Under 29 U.S.C. §1132(a)(1)(A) and (c)
Against the Plan Administrator)**

63. Optum, acting as agent for the Plan Administrator, is obligated to provide to participants and beneficiaries of the Plan within 30 days after request, documents under which the Plan was established or operated, including but not limited to any administrative service agreements between the Plan and Optum, the medical necessity criteria for mental health and substance abuse, and medical necessity criteria for skilled nursing and rehabilitation facilities.

64. In spite of Brad's requests during the appeal process for Optum to produce the documents under which the Plan was operated, Optum repeatedly failed to produce to the Plaintiffs the documents under which the Plan was operated, including but not limited to any administrative service agreements between the Plan and Optum, the medical necessity

15

criteria for mental health and substance abuse, and medical necessity criteria for skilled nursing and rehabilitation facility treatment within 30 days after they had been requested.

65. After Optum repeatedly failed to provide these materials, Brad sent one final letter dated February 13, 2024, to both Optum and the Plan Administrator again requesting the documents which he was statutorily entitled to receive upon request. Optum and the Plan Administrator did not comply with Brad's request for documents.

66. The failure of the Plan Administrator and its agent Optum, to produce the documents under which the Plan was operated, as requested by the Plaintiffs, within 30 days of Brad's request for ERISA documents, provides the factual and legal basis under 29 U.S.C. §1132(a)(1)(A) and (c) for this Court to impose statutory penalties against the Plan Administrator up to $110 per day from 30 days from the date of each of these letters to the date of the production of the requested documents.

67. In addition, Plaintiffs are entitled to an award of prejudgment interest pursuant to U.C.A. §15-1-1, and attorney fees and costs pursuant to 29 U.S.C. §1132(g)

WHEREFORE, the Plaintiffs seek relief as follows:

1. Judgment in the total amount that is owed for H.K.'s medically necessary treatment at Fulshear under the terms of the Plan, plus pre and post-judgment interest to the date of payment;

2. Appropriate equitable relief under 29 U.S.C. §1132(a)(3) as outlined in Plaintiffs' Second Cause of Action;

3. For an award of statutory penalties of up to $110 a day against the Plan Administrator after the first 30 days for each instance of the Plan Administrator and its agent Optum's failure or refusal to fulfill their duties, to provide the Plaintiffs

16

with the documents they had requested.

4. Attorney fees and costs incurred pursuant to 29 U.S.C. §1132(g); and

5. For such further relief as the Court deems just and proper.

DATED this 15th day of November, 2024.

By    s/ Brian S. King
          Brian S. King
          Attorney for Plaintiffs

County of Plaintiffs' Residence:
Weld County, Colorado.